IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 29, 2020

**JARON HARRIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 106573   Bobby R. McGee, Judge**

_____

**No. E2020-00017-CCA-R3-PC**

_____

Jaron Harris, Petitioner, filed a pro se post-conviction petition and an amended petition through counsel, claiming he was denied the effective assistance of counsel, due process, and equal protection based on the racial composition of the jury.  The post-conviction court denied relief.  Although Petitioner mentions ineffective assistance of counsel in his brief, the only issue raised on appeal is the stand-alone equal protection issue, citing the racial composition of the jury.  Because Petitioner failed to raise the jury composition issue on direct appeal of his convictions and because Petitioner abandoned the other issues raised in his post-conviction petition, those issues are waived.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Jaron Harris.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**<u>Factual and Procedural History</u>**

*Trial*

At trial, the evidence presented showed that Petitioner went to the Grand Forest apartment complex to buy marijuana.  Petitioner's co-defendant, Devin Jamison, testified

that he and Petitioner approached one of the victims, Will Roser, asking where to buy marijuana. Mr. Roser took Petitioner and co-defendant Jamison to his apartment and showed him some marijuana. Petitioner then pointed a gun at Mr. Roser and stated, "we need everything, we need everything." Mr. Roser took them to another apartment where he said they could get more marijuana. Once inside, Petitioner again pointed a gun at the men inside and said, "We need everything." The second victim, Sawyer Webb, pulled out a gun, and Petitioner fired his gun three or four times, shooting Mr. Webb and Mr. Roser. Petitioner and his co-defendant fled. Mr. Roser suffered a gunshot wound to the leg, and Mr. Webb later died from his wounds. *See State v. Jaron Harris*, No. E2014-00822-CCA-R3-CD, 2015 WL 871740, at *1-10 (Tenn. Crim. App. Feb. 28, 2015), *perm. app. denied* (Tenn. May 14, 2015).

Following trial, the jury convicted Petitioner of two counts of especially aggravated kidnapping, two counts of aggravated robbery, four counts of first degree felony murder, one count of second degree murder, one count of attempted second degree murder, two counts of employing a firearm during the commission of a dangerous felony, and two counts of aggravated assault. After dismissing one count of aggravated assault and merging the homicide convictions, "the trial court sentenced Petitioner to a total effective sentence of life plus fourteen years in the Tennessee Department of Correction." *Id*. This court affirmed his convictions on direct appeal, and the Tennessee Supreme Court denied further review. *Id.*

*Post-Conviction Petition and Hearing*

In his petition for post-conviction relief, Petitioner claimed he was denied the effective assistance of counsel because trial counsel failed to: (1) object to the racial makeup of both the petit jury and the jury venire; (2) object that the petit jurors were discussing the case during breaks; (3) object to a petit juror removing himself from the petit jury without sufficient grounds; (4) object to testimony from several witnesses; (5) advise Petitioner regarding his right not to testify; and (6) request a self-defense jury instruction. Petitioner also claimed he was denied due process and equal protection because of the racial makeup of the jury, the improper juror discussions during breaks, and the improper removal of a juror.

At the post-conviction hearing, Petitioner testified that he was present during the selection of the jury but that trial counsel did not discuss with Petitioner the composition of the jury or the jury selection process. He stated that more than two dozen potential jurors were seated in the courtroom and that only "three or four" were African-American. Petitioner stated that none of the African-Americans were seated as jurors. He said that trial counsel did not express any concerns that there were no African-American jurors. Petitioner did not recall if the State used any strikes for cause against the African-

American potential jurors.  Petitioner testified that he did not discuss the jury makeup with trial counsel after his conviction and that trial counsel did not discuss with Petitioner his motion for new trial.  Petitioner stated that he was concerned about the racial makeup of the jury.

The State submitted as an exhibit data from the United States Census Bureau showing that the racial composition of Knox County was 8.9% African-American.  On cross-examination, the following exchange took place:

[THE STATE]: Now, as far as the jury, do you know how many African-American jurors were called for the initial jury selection?

[PETITIONER]: I have no idea.

[THE STATE]: Do you know how many Caucasian people were called?

[PETITIONER]: I have no idea.

[THE STATE]: Or any other race?

[PETITIONER]: I have no idea.

. . . .

[THE STATE]: Do you know if anybody was biracial?

. . . .

[PETITIONER]: No.

[THE STATE]: And . . . are you telling the [c]ourt that you believe that just because somebody is a particular race, that they're more inclined to vote for you?

[PETITIONER]: No, I'm not saying that.  No.

Trial counsel testified that he was present with Petitioner during jury selection.  He did not recall how many people were present for the jury venire but stated that "the courtroom was pretty full."  He agreed the venire could have included three dozen people.  Trial counsel stated that the jury questionnaire did not include any information about race.  He had no recollection about the racial composition of the jury venire or the

petit jury and no recollection about whether he made a *Batson* challenge. Trial counsel explained, "I just know I routinely would make a *Batson* challenge if there was a challenge made by the State . . . to an African-American." He did not recall if he struck any African-American jurors, and he did not recall Petitioner expressing any concern over the racial composition of the jury.

Regarding Petitioner's racial composition argument, the post-conviction court denied relief, stating,

> [W]e want juries and jurors to be selected randomly. We wish that we always had a distribution -- a cross-section so that every demographic, racial, gender, socioeconomic, educational, that everyone's represented. That simply doesn't happen all the time.

> And in terms of the Constitution and the [c]onstitutionality of the jury selection process, the touchstones are that it must be random and that it -- that it not invidiously or deliberately discriminate against any particular group.

> There have been efforts made to try to increase African-American participation on our juries. Certainly, it's something we always watch. And we always do the *Batson* analysis anytime an African-American is stricken from the jury and an objection is lodged.

> But the Constitution requires that the methodology be racially neutral. In areas like Knoxville, that -- where the population is largely Caucasian, we don't wind up with what we should have. I thought it was around [thirteen] percent that -- of a[n] African-American population . . . of the entire population.

> But at any rate, our method for selecting jurors is racially neutral. It'd be nice if we had greater participation by African-Americans, but we can't start picking people because they're African-American. That doesn't work either. So as long as the methodology is -- is neutral and it doesn't seek to discriminate against any particular group or, certainly, against African-Americans, then it does pass [c]onstitutional muster.

Petitioner now appeals.

## Analysis

On appeal, Petitioner argues that the racial composition of the petit jury denied him equal protection of the law. At the end of his argument, he asserts in one sentence that he was denied the effective assistance of counsel because trial counsel failed to object to the racial composition of the petit jury and the jury venire.

The State responds that trial counsel was not deficient for failing to object to the composition of the petit jury because constitutional guarantees only extend to the racially-neutral *selection* of the jury. It argues that the Constitution does not guarantee that a petit jury's composition reflect a cross-section of the community. Therefore, it contends, trial counsel could not be deficient for failing to lodge a "frivolous objection." The State also asserts that Petitioner's claim that trial counsel failed to object to the racial composition of the jury venire must fail because Petitioner "failed to present any proof regarding how Knox County summoned individuals to the jury venire" and because "his jury venire was, in fact, an accurate and fair cross-section of Knox County." Finally, the State asserts that Petitioner's stand-alone equal protection claim has been waived.

### Ineffective Assistance of Counsel

Petitioner has not properly raised the issue of ineffective assistance of counsel in this court. In his brief, Petitioner failed to list ineffective assistance of counsel in his issues presented for review. *See* Tenn. R. App. P. 27(a) (4). Moreover, Petitioner does not present any argument, citation to authority, or appropriate references to the record regarding this issue. Accordingly, this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this [c]ourt.").

### Equal Protection

Petitioner's equal protection claim asserts that a petit jury "must reflect the racial composition of the community in which it serves[.]" Petitioner did not raise an equal protection claim on direct appeal. *See Jaron Harris*, 2015 WL 871740, at *1. A petitioner waives a ground for relief if he failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless

> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-106(g) (2019).  Neither of these two statutory exceptions apply to Petitioner's claim.  Thus, this issue is waived. *Black v. State*, 794 S.W.2d 752, 756 (Tenn. Crim. App. 1990); *Strouth v. State*, 755 S.W.2d 819, 822 (Tenn. Crim. App. 1986).

## **Conclusion**

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

                _____

                ROBERT L. HOLLOWAY, JR., JUDGE